**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAMUEL LEWIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| LOANDEPOT.COM, LLC, | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

**CLASS ACTION COMPLAINT**

NOW COMES Plaintiff, SAMUEL LEWIS, individually and on behalf of all others similarly situated, by and through his attorneys, Blaise & Nitschke, P.C., brings this Class Action Complaint against Defendant, LOANDEPOT.COM, LLC (hereinafter "Loan Depot"), and alleges as follows:

**I.       INTRODUCTION**

1.       In March 2020, Congress passed and the President signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. Law 116-136, March 27, 2020, 134 Stat. 281. That Act included several provisions to help mortgage borrowers. One of those provisions permitted borrowers affected by COVID-19 to request that their mortgage loan be temporarily placed in forbearance.

2.       What followed was emblematic of Defendant Loan Depot's negligent, reckless, and willful mistreatment of its customers.

3.       Without notice or consent, Loan Depot reported an increase in the loan principle to the credit reporting agencies after granting Plaintiff a COVID-19 related forbearance.

4.      Loan Depot represented to Plaintiff that this would not have any negative implications on his credit nor change his principle balance.

5.      Customers like Plaintiff only found out about Loan Depot's actions—if they found out at all—when they went to apply for credit and were denied, saw the increased principle amount noted on a credit report, or were unable to make a mortgage payment, among other circumstances.

6.      In short, Loan Depot so badly mismanaged this CARES Act program that the bank ended up hurting the very people Congress intended to help. And it did so at the worst possible time for people like Plaintiff.

7.      Plaintiff therefore brings this proposed class action case on behalf of himself and others similarly situated, whom Loan Depot has harmed.

## II.      JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are 1,000 or more Class members nationwide, and the aggregate amount in controversy exceeds $10,000,000.00, exclusive of interest and costs.

9.      This Court has personal jurisdiction over Loan Depot because Loan Depot maintains its principal office in California, and Loan Depot regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and derives substantial revenue from services provided to persons in this District and in Illinois.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendant, and Defendant has sufficient contacts with this District and Illinois.

11.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District.

### III.     PARTIES

12.     Plaintiff, SAMUL LEWIS, is a resident and citizen of Cook County, Illinois.

13.     Defendant, LOANDEPOT.COM, LLC, is a Delaware Limited Liability Company registered to do business in Illinois, with its primary place of business in Foothill Ranch, California. Loan Depot provides personal and commercial banking services.

### IV.     FACTUAL ALLEGATIONS

**A.     Loan Depot's Faulty Forbearance Program**

14.     Congress provided in the CARES Act that borrowers with government-sponsored entity ("GSE") mortgages—those backed by Freddie Mac or Fannie Mae—could request to suspend mortgage payments due to COVID-19 by having the loans put in forbearance.

15.     When a mortgage servicer like Loan Depot places a loan in forbearance, it permits borrowers to suspend or reduce mortgage payments for a limited time. However, those payments are not forgiven; they are just delayed. The borrower must still repay the missed payment in the future, often by adding them to the end of loan or—if the borrower is able—paying them off before the loan ends. Moreover, during forbearance, interest continues to accrue even though it is not being paid down.

16.     The CARES Act provides affected borrowers the right to request and obtain a forbearance for up to 180 days as well as an extension for up to another 180 days (for a total of up to 360 days).

17.     Specifically, Section 4022 of that Act provides that "a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency may request forbearance on the Federally backed mortgage loan, regardless of delinquency status, by— (A) submitting a request to the borrower's servicer; and (B) affirming that the borrower is experiencing a financial hardship during the COVID–19 emergency." 116 P.L. 136, 2020 Enacted H.R. 748, 116 Enacted H.R. 748, 134 Stat. 281.

18.     Under Section 4022, the default forbearance period is 180 days, but borrowers may also request a subsequent 180-day extension. However, "at the borrower's request, either the initial or extended period of forbearance may be shortened." As the U.S. Department of Housing and Urban Development's Inspector General explained in an April report, "The borrower also has the option at **any time** to shorten the forbearance period and resume payments." *Id.* (emphasis added).

19.     In addition, Section 4023 provides similar relief for borrowers with multifamily residential properties: "A multifamily borrower with a Federally backed multifamily mortgage loan that was current on its payments as of February 1, 2020, may submit an oral or written request for forbearance under . . . to the borrower's servicer affirming that the multifamily borrower is experiencing a financial hardship during the COVID–19 emergency." In response, the servicer "shall" document the financial hardship, provide a forbearance for up to 30 days, and provide extensions of the forbearance where warranted. Multifamily borrowers "shall have the option to discontinue the forbearance at any time" under Section 4023. *Id.*

20.     It appears millions of borrowers placed their loans in forbearance after passage of the CARES Act. As of August, the share of Fannie Mae and Freddie Mac loans in forbearance was 4.94%, according to the Mortgage Bankers Association. The Association estimated that 3.6

million homeowners are in forbearance plans. That's down from a spike of about 4.3 million

homeowners in forbearance as of June 2020, after passage of the CARES Act.

21.     Forbearance can help people in temporary hardship due to COVID-19. But a

survey by LendingTree found that 70% of homeowners who have gone into forbearance did not

need the relief. Tendayi Kapfidze, *LendingTree Finds the Majority of Homeowners Approved for*

*a Mortgage Forbearance May Not Have Needed One*, LENDINGTREE (May 18, 2020),

https://www.lendingtree.com/home/mortgage/majority-of-homeowners-approved-for-mortgage-

forbearance-may-not-have-needed-one-study/ (last visited December 30, 2020).

22.     The GSEs have advised servicers like Loan Depot to make sure borrowers like

Plaintiff are fully informed about the downsides to a forbearance. As Fannie Mae directed in an

August 2020 "FAQ" for servicers (updated on October 14, 2020): "It is important that the

borrower go into the forbearance plan understanding that at the end of the forbearance period the

forborne payments must be accounted for. Borrowers should not be left with the impression that

the missed payments are forgiven." *COVID-19 Frequently Asked Questions – Servicing*, FANNIE

MAE (October 14, 2020), https://singlefamily.fanniemae.com/media/22361/display (last visited

December 30, 2020).

23.     In addition, as Fannie May reminded servicers in Lender Letter (LL-2020-02):

> [S]ervicers must inform the borrower that the payments which are the
> subject of a forbearance plan have only been delayed or reduced, not
> forgiven, and that once the forbearance plan is complete, one of the
> following must occur:
> • the mortgage loan must be brought current through a reinstatement,
> • the borrower is approved for another workout option,
> • the mortgage loan is paid in full, or
> • the servicer refers the mortgage loan to foreclosure in accordance with
>   applicable law

*Lender Letter (LL-2020-02); To: All Fannie Mae Single-Family Servicers Impact of COVID-19 on Servicing*, FANNIE MAE (December 9, 2020), https://singlefamily. fanniemae.com/media/22261/display (last visited December 30, 2020).

24.　　Regardless of whether a borrower needs the help or not, or is fully informed of the consequences, lenders may not put a loan in forbearance without a customer requesting it. As the Consumer Financial Protection Bureau explains, "You must contact your loan servicer **to request** this forbearance." Banks may not institute it automatically. *Learn About Mortgage Relief Options and Protections*, CONSUMER FINANCIAL PROTECTION BUREAU (November 2, 2020), https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/mortgage-relief/ (last visited December 30, 2020).

25.　　But that's exactly what Loan Depot did. As documented by Plaintiff and in consumer complaints from across the nation, Loan Depot placed borrowers in forbearance and added the missed payments to the end of the loan term as additional principle.

26.　　Loan Depot's blunder is not an inconsequential administrative glitch. Forbearance can have grave impacts on a borrower's credit history or access to credit.

**B.　Loan Depot added to the principle amount of Plaintiff's Loans in Forbearance without his Consent.**

27.　　One of the many victims of Loan Depot is Plaintiff, Samuel Lewis. Plaintiff was concerned about whether he would be able to make his mortgage payments, called Loan Depot—his mortgage servicer—to learn about his options. At that point, the Loan Depot representative he spoke to said accepting the forbearance would not have any effect on his credit. Plaintiff relied on this misrepresentation to his detriment.

28.　　Unbeknownst to Plaintiff, after placing his loan in forbearance, Loan Depot added the unpaid interest that would have accrued during the forbearance period, to the principle of the

loan and reported the changed amount to the three credit bureaus. Plaintiff only found out when he attempted to refinance his home.

29.     On April 5, 2019, when Loan Depot sent notice that they had accepted Plaintiff's forbearance, no representation was made that the unpaid interest would be added to the principle of the loan and reported to the credit agencies. *See* April 5, 2020, letter attached hereto and incorporated herein as Exhibit A. In fact, the letter stated:

> Credit Reporting: Please note we will suppress negative reporting to all credit reporting agencies for the duration of the forbearance plan. CREDIT SCORING COMPANIES MAY CONSIDER WHETHER THERE IS AN INCREASED CREDIT RISK DUE TO THE LACK OF REPORTING. WE ARE UNCERTAIN AS TO THE IMPACT ON YOUR CREDIT SCORE, PARTICULARLY IF YOU ARE CURRENT ON YOUR MORTGAGE OR OTHERWISE HAVE A GOOD CREDIT SCORE. For more information about your credit score please go to: https://www.consumer.ftc.gov/articles/0152-credit-scores.

*See* Exhibit A.

30.     Plaintiff complied with all of the plans' terms and conditions.

31.     In early June 2020, Plaintiff began investigating refinancing his mortgage by checking his credit score.

32.     As of June 3, 2020, Plaintiff's outstanding Principle balance with Loan Depot was $659,823.32, as reported by all three credit bureaus.

33.     On or about June 1, 2020, Plaintiff submitted several preliminary applications to refinance his mortgage with several lenders.

34.     On June 12, 2020, Experian alerted Plaintiff that his loan balance had increased and his credit score had dropped 14 points.

35.     Upon investigation, Plaintiff learned that Loan Depot had reported an increase to his remaining Principle balance due by over $10,000.00.

36.    Plaintiff contacted Loan Depot regarding this Principle increase and was informed that they had the right to do so because he was on the Forbearance Plan.

37.    Plaintiff reminded them that the terms of the Forbearance Plan specifically stated that there would not be any negative reporting done on his credit, for which they had no response.

38.    Accordingly, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB") on July 14, 2020. A copy of the July 14, 2020 CFPB Complaint, Loan Depot's response, and the finding by the CFPB is attached hereto and incorporated herein as Exhibit B.

39.    Loan Depot's actions have thus caused concrete and particularized injury to Plaintiff, which this complaint seeks to redress.

## V.    CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this complaint on behalf of himself and all others similarly situated under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). The Class that Plaintiff seeks to represent is defined as follows:

> All residential mortgage borrowers with a Government Sponsored Enterprise-backed loan for whom LOANDEPOT.COM, LLC placed a residential mortgage into forbearance under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, without receiving the borrower's request for a forbearance and affirmance that the borrower is experiencing a financial hardship due to COVID-19.

41.    Excluded from the Classes are Loan Depot's officers, directors and employees; the judicial officers and associated court staff assigned to this case; and the immediate family members of such officers and staff.

42.    **Numerosity**: The members of the Class are so numerous that joinder of all members would be impractical. Loan Depot is one of the nation's largest home lenders and servicers. The Consumer Financial Protection Bureau has documented dozens of complaints. The

precise numbers of members can be ascertained through discovery, including Loan Depot's records.

43.     **Commonality and Predominance**: Common questions of law and fact predominate over any questions affecting only individual members of the Class. For Plaintiff and the Class, the common legal and factual questions include, but are not limited to the following:

    A.   Whether Loan Depot negligently or intentionally enrolled customers in forbearance programs without their consent;

    B.   Whether Loan Depot has breached terms implied in its contracts with Plaintiff and the Class Members;

    C.   Whether Loan Depot's actions or inactions violated the consumer protection statutes invoked herein;

    D.   Whether Plaintiff and the Class members were damaged by Loan Depot's conduct and, if so, the appropriate amount of damages; and

    E.   Whether, because of Loan Depot's misconduct, Plaintiff and the Class are entitled to equitable and declaratory relief, and, if so, the nature of such relief.

44.     **Typicality**: The representative Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all the members of the Class have been injured by the same wrongful practices of Loan Depot. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

45.     **Adequacy**: Plaintiff will fully and adequately assert and protect the interests of the Class, and have retained class counsel who are experienced and qualified in prosecuting class

actions. Neither Plaintiff nor his attorneys have any interests contrary to or in conflict with the Class.

46.     **Predominance and Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

47.     Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Loan Depot has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

48.     Any difficulties in the management of this nationwide class will be minimal because Illinois law will apply to all Class members' claims.

49.     Loan Depot has, or has access to, addresses and/or other contact information for the members of the Class, which may be used to provide notice of the pendency of this action.

## VI.     CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 15 U.S.C. § 1692(E) FOR MAKING FALSE, DECEPTIVE, OR MISLEADING REPRESENTATIONS
**(On behalf of Plaintiff and the Putative Class)**

50.      Plaintiff repeats, realleges, and incorporates by reference the foregoing Paragraphs 1-49 as though fully stated herein.

51.      In response to Plaintiff's July 14, 2020, CFPB Complaint, Loan Depot stated that "loanDepot reported to the credit bureaus the aggregate amount owed on the loan each month but did not report an increase in outstanding principal balance, delinquent payments, nor any negative account information." *See* Exhibit B.

52.      Loan Depot's representation to the CFPB was false, and they knew it was false when they made it.

53.      In fact Loan Depot reported to all three credit bureaus an increase of the principle balance of Plaintiff's loan, copies of which were attached to Plaintiff's July 14, 2020 CFPB Complaint. *Id.*

54.      Loan Depot's false reporting had a significant negative impact on Plaintiff's credit score. *Id.*

55.      Loan Depot's false representations to the CFPB are a violation of 15 U.S.C. § 1692(e).

WHEREFORE, Plaintiff requests that judgment be entered in his favor against the Defendant, for the following:

a.   Statutory damages pursuant to 15 U.S.C. § 1692(k)(a)(2);

b.   Actual damages;

11

c. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692(k)(a)(2); and

d. Such other or further relief as this Honorable Court deems proper.

## COUNT II
## FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")
### (On behalf of Plaintiff and the Putative Class)

56. Plaintiff repeats, realleges, and incorporates by reference the foregoing Paragraphs 1-55 as though fully stated herein.

57. Plaintiff, Samuel Lewis, is a natural person and resident of Cook County, Illinois, and is a "consumer" as defined by 15 U.S.C. § 1692(a)(3) of the FDCPA.

58. Defendant, Loan Depot, is a corporation that acts as a debt collector, as defined by § 1692(a)(6) of the FDCPA, because it regularly uses the mail and/or the telephone to collect, or attempt to collect, directly or indirectly, delinquent consumer debts. Loan Depot's principal purpose is to enforce security interests, and Loan Depot is thus a debt collector for the purposes of § 1692(f)(6), as well as under the general definition of a debt collector under this section.

59. 15 U.S.C § 1692(e) states, in part, as follows:

§ 1692e. False or misleading representations
A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.
(2) The false representation of—
(A) the character, amount, or legal status of any debt[.]

60. By falsely reporting the amount of Plaintiff's Principle balance due by over $10,000.00, Loan Depot has violated 15 U.S.C. § 1692(e)(2)(A).

12

61.     In its attempts to collect the debt allegedly owed by Plaintiff, Defendant further violated the FDCPA, 15 U.S.C. § 1692, in one or more of the following ways:

a)  Defendant violated 15 U.S.C. § 1692(e)(8) by falsely reporting the amounts due and making false statements to the CFPB; and

b)  Defendant violated 15 U.S.C. § 1692(e)(10) by falsely reporting the amounts due and making false statements to the CFPB.

62.     As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs, and reasonable attorneys' fees.

WHEREFORE, Plaintiff requests that judgment be entered in his favor against the Defendant, for the following:

a.  Statutory damages pursuant to 15 U.S.C. § 1692(k)(a)(2);

b.  Actual damages;

c.  Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692(k)(a)(2); and

d.  Such other or further relief as this Honorable Court deems proper.

## COUNT III
### VIOLATIONS OF CONSUMER FRAUD ACT 815 ILCS 505/2 ET SEQ.
#### (On behalf of Plaintiff and the Putative Class)

63.     Plaintiff repeats, realleges, and incorporates by reference paragraphs 1-62 as if fully stated herein.

64.     The enforcement of claimed security interests are activities of trade and commerce as those terms are defined in the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("the Act").

65.     Plaintiff is a "consumer" as that term is defined in the Act.

66.   Defendant is in the business of enforcing security interests in Illinois.

67.   In making misrepresentations to Plaintiff, Loan Depot's representatives and/or employees were acting in a representative capacity on behalf of Defendant.

68.   Loan Depot's representatives and/or employees were acting at the control and direction of Defendant, which is vicariously liable for the actions of its representatives and/or employees.

69.   Defendant caused misrepresentations and false threats to be made against Plaintiff by falsely reporting the amounts due and making false statements to the CFPB.

70.   In truth and in fact, Plaintiff's Principle amount due was substantially less than reported.

71.   Defendant's misrepresentations, as set out above, were communicated to Plaintiff with the intent that he and the CFPB rely on said misrepresentations, and Plaintiff relied on said misrepresentations thereafter in contacting and retaining an attorney to advise him on the matter, incurring expenses thereby.

72.   Plaintiff suffered actual and consequential damages due to Defendant's misrepresentations, including but not limited to attorneys' fees he incurred in reliance on Defendant's communications, related to his increased credit score, and the false reporting.

73.   Defendant's actions were done with reckless disregard for the rights of Plaintiff, thereby warranting substantial punitive damages.

74.   Defendant's actions, set out above, directly and proximately caused Plaintiff's damages, as listed above.

WHEREFORE, Plaintiff requests that judgment be entered in his favor against the Defendant, for the following:

a.  Actual damages suffered by the Plaintiff;

b.  Punitive damages;

c.  Plaintiff's attorneys' fees and costs; and

d.  Such other or further relief as this Honorable Court deems proper.

## VII.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 30, 2020                    Respectfully submitted,

                                            SAMUEL LEWIS, individually and
                                            on behalf of all others similarly
                                            situated (collectively "Their")

                                    By:     /s/ *Thomas J. Nitschke*
                                            Thomas J. Nitschke
                                            Blaise & Nitschke, P.C.
                                            123 N. Wacker Drive, Suite 250
                                            Chicago, IL 60606
                                            T: (312) 448-6602
                                            F: (312) 803-1940
                                            tjnitschke@blaisenitschkelaw.com
                                            ARDC No. 6225740
                                            *One of Their attorneys*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 30th day of December, 2020, he caused the foregoing instrument to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system.

/s/ *Thomas J. Nitschke*
Thomas J. Nitschke

Blaise & Nitschke, P.C.
123 N. Wacker Drive, Suite 250
Chicago, IL 60606
T: (312) 448-6602
F: (312) 803-1940
tjnitschke@blaisenitschkelaw.com
ARDC No. 6225740