IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL LEWIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:20-cv-07820 |
| LOANDEPOT.COM, LLC, | ) ) ) | Judge Jorge L. Alonso |
| Defendant. | ) ) | Magistrate Young B. Kim |

**DEFENDANT LOANDEPOT.COM, LLC'S MOTION TO DISMISS AMENDED
COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

The gravamen of Plaintiff Samuel Lewis's ("Plaintiff") First Amended Class Action Complaint (the "FAC") is that loanDepot.com LLC, ("Defendant") placed his mortgage loan into forbearance under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act at Plaintiff's request and, despite advising him orally that the forbearance would not affect his credit, Plaintiff alleges that Defendant negatively reported to the credit bureaus regarding the forbearance and misrepresented this reporting to the Consumer Financial Protection Bureau ("CFPB"). This is, essentially, the same allegations in his original complaint. For many of the same reasons the original complaint failed, so too does the FAC. Plaintiff again fails to state any claim upon which relief can be granted and, the FAC should be dismissed with prejudice.

I.  **BACKGROUND**

   A. **Factual Allegations**

Plaintiff alleges that in April 2020, he voluntarily placed his mortgage with Defendant into forbearance pursuant to the CARES Act because he had been affected by the novel coronavirus pandemic ("Covid-19"). FAC, ¶¶ 26-28, its Exs. A-B. Plaintiff alleges that at an unspecified time he spoke to an unidentified representative of Defendant who purportedly told him that "accepting the forbearance would not have any effect on his credit." FAC ¶ 26. Plaintiff also attaches a letter

as Exhibit B to the FAC (the "Acceptance Letter") which acknowledged Plaintiff's placement in the forbearance program. *See* FAC, its Ex. B. The Acceptance Letter specifically states:

> Credit Reporting: Please note we will suppress negative reporting to all credit reporting agencies for the duration of the forbearance plan. CREDIT SCORING COMPANIES MAY CONSIDER WHETHER THERE IS AN INCREASED CREDIT RISK DUE TO THE LACK OF REPORTING. WE ARE UNCERTAIN AS TO THE IMPACT ON YOUR CREDIT SCORE, PARTICULARLY IF YOU ARE CURRENT ON YOUR MORTGAGE OR OTHERWISE HAVE A GOOD CREDIT SCORE. For more information about your credit score please go to: https://www.consumer.ftc.gov/articles/0152-credit-scores.

The FAC further alleges that once the loan was in forbearance, Defendant "added the unpaid interest that would have accrued during the forbearance period, to the principal of the loan and reported the changed amount to the three credit bureaus." FAC ¶ 27. In Exhibit B however, Plaintiff references three credit reporting documents, which Plaintiff entitled "ScoreSense_Equifax (25 June2020)," "Experian Detail Timeline (25 June 2020)," and "ScoreSense_TransUnion (25 June 2020)," all of which purport to show how Defendant reported the loan to the credit bureaus during the forbearance. A true and correct copy of these documents is attached hereto as Exhibit 1.[1] Plaintiff alleges that this reporting caused his credit score to decrease by 14 points and affected his ability to refinance his mortgage. *See* FAC ¶¶ 31-34.

Based on these allegations, Plaintiff filed a complaint to the CFPB on July 14, 2020, which he attaches (without the exhibits) as Exhibit B to his FAC. *See* FAC, its Ex. B (the "CFPB Complaint"). On September 25, 2020, Defendant responded to the CFPB Complaint, explaining that it reported the status of Plaintiff's mortgage in accordance with the CARES Act, the FCRA, and the CFPB's guidance on credit reporting under the CARES Act, and that it reported the total

---

[1] In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Here, the attachments to Plaintiff's FAC which he filed with the CFPB are not included in the FAC's Exhibit B. However, each of the referenced documents are critical to Plaintiff's claims because they form the basis of the complained-of action by Defendant in Plaintiff's Counts I through III, namely that Defendant misrepresented information to the CFPB which is evidenced by the exhibits to the CFPB complaint. *See* FAC, ¶¶ 50-56, 66-76. Additionally, the documents are referred to in Plaintiff's FAC and Exhibit B, despite not being included in Exhibit B. *See e.g.* FAC, ¶¶ 37, 54-55; its Ex. B. Thus, the Court may properly consider the documents entitled "ScoreSense_Equifax (25 June2020)," "Experian Detail Timeline(25 June 2020)," and "ScoreSense_TransUnion (25 June 2020)" which are referred to in Plaintiff's FAC, Plaintiff's FAC's Exhibit B, and attached hereto as Exhibit 1.

aggregate amount owed on the loan each month, but did not report an increase in the principal balance. FAC, its Ex. B, pp. 3-4. Thereafter, Plaintiff replied claiming that Defendant misrepresented the reporting, reiterated that Defendant reported an increased principal balance, and pointed specifically to the credit reporting documents he attached to the CFPB Complaint to support his claims of misrepresentation by Defendant. *Id.*

Plaintiff then filed this suit claiming that Defendant reported that the principal balance of his loan (and those belonging to the members of the purported class) increased and that Defendant made misrepresentations to him and to the CFPB in its response to the CFPB Complaint. By those actions, Plaintiff contends that Defendant violated the FDCPA and the ICFA, and the FCRA. This Court should dismiss Plaintiff's claims in their entirety, with prejudice.

## II. LEGAL STANDARD

To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, unsupported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

While courts must accept the well-pleaded facts in the complaint as true, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (internal quotations omitted). Moreover, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). On a Rule 12(b)(6) motion, the Court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to

in it, and information that is subject to proper judicial notice." *Geinosky,* 675 F.3d at 745 n.1.

## III.    ARGUMENT

Like his original complaint, Plaintiff's FAC fails to state a claim. As further set forth below, each of Plaintiff's claims fail and should be dismissed with prejudice.

### A.  **Plaintiff's Fair Debt Collection Practices Act ("FDCPA") Claims Fail**

Plaintiff asserts two claims under the FDCPA against Defendant, both of which fail. In Count I, Plaintiff claims that Defendant violated 15 U.S.C. § 1692(e) by making false representations to the CFPB. FAC ¶¶ 50-56. In Count II, Plaintiff alleges that Defendant violated 15 U.S.C. §§ 1692(e)(8) and (10) by falsely reporting the amounts due and making false statements to the CFPB. *Id.* ¶ 63. Both of these counts fail because the exhibits to the CFPB Complaint clearly contradict Plaintiff's claims. *See* Ex. 1. Additionally, Count I fails because Plaintiff does not have standing to assert this claim under binding Seventh Circuit precedent. Moreover, both of these claims fail because these sections only apply to "debt collectors" as defined by § 1692(a)(6) and require affirmative acts of debt collection.

#### i.    *The Exhibits attached to the CFPB Complaint defeat any claim that Defendant falsely reported Plaintiff's "principal" balance.*

As a matter of law, unadorned factual allegations in the FAC, which are directly contradicted by exhibits, should be ignored. *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010)) (holding that when allegations are contradicted by written exhibits that are attached to a complaint, "the exhibits trump the allegations."). Here Plaintiff's allegations are directly contradicted by exhibits in several instances.

In Count I, Plaintiff claims that Defendant falsely reported to the CFPB that it had "reported to the credit bureaus the aggregate amount owed on the loan each month but did not report an increase in outstanding principal balance, delinquent payments, nor any negative account information." FAC ¶ 52. Plaintiff claims that the exhibits to the CFPB Complaint establish that

4

this was false because, according to Plaintiff, Defendant "reported to all credit bureaus an increase in ***principal balance*** of Plaintiff's loan…." *Id*. ¶ 54 (emphasis added). Yet, the actual exhibits referred to by Plaintiff demonstrate the veracity of Defendant's report to the CFPB. Indeed, the reports show that Defendant did not report "principal" but rather reported the "balance." *See* Ex. 1. Thus, the alleged false statement made by Defendant to the CFPB relied upon by Plaintiff in support of Count I should be ignored. *Abcarian*, 617 F.3d at 933. Because Count I exclusively relies upon this allegedly false statement, it must fail.

Similarly, Count II relies upon the same allegedly "false reporting." FAC, ¶ 62. As noted above, the reports contained in Exhibit 1 establish that any claim based upon false reporting of Plaintiff's "principal" balance fails. Thus, to the extent that Count II relies upon this alleged false statement it also fails. In the end, such inconsistencies render Plaintiff's allegations nothing more than unadorned conclusory accusations and generalized, naked assertions, and as such, the allegations are not entitled to the presumption of the truth and will not suffice to prevent a motion to dismiss. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

### ii. *Plaintiff lacks standing to assert an injury in fact from Defendant's purported misrepresentations in the response to the CFPB Complaint.*

Article III standing requires a plaintiff "to establish that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Larkin v. Fin. Sys. of Green Bay, Inc*., 982 F.3d 1060, 1064 (7th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546, 194 L. Ed. 2d 635 (2016). When a plaintiff alleges a violation of the FDCPA, the plaintiff must establish standing by alleging that the violation either harmed the plaintiff or caused an appreciable risk of harm. *See Casillas v. Madison Ave. Assocs., Inc*., 926 F.3d 329, 335 (7th Cir. 2019); *Larkin*, 982 F.3d at 1066. "The claimed injury cannot be a generalized grievance shared by all members of the public." *Larkin*, 982 F.3d at 1064 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

Here, Plaintiff has not alleged any harm stemming from Defendant's purported misrepresentations to the CFPB. *See generally* FAC. Instead, with respect to Count I, Plaintiff baldly alleges that the purportedly false statements "had a significant negative impact on Plaintiff's credit score," FAC ¶ 55, but fails to explain how purportedly false statements to the CFPB could have had any impact on his credit score. Indeed, there is no allegation that the statements made by Defendant to the CFPB were ever transmitted to a credit reporting agency. Similarly, in Count II, Plaintiff asserts that Defendant violated sections 1692(e)(8) and (10) by falsely reporting the amounts due and making false statements to the CFPB, FAC ¶ 63, however, there is no allegation as to how any reports or statements to the CFPB harmed Plaintiff. *See generally id*. Accordingly, Plaintiff lacks standing to bring a FDCPA claim based upon any such alleged violations.

The Seventh Circuit recently handed down a flurry of cases consistently holding that real harm is required in order to establish Article III standing when asserting an FDCPA claim.[2] Like those plaintiffs, Plaintiff here fails to articulate an injury of any kind resulting from the purported misrepresentations to the CFPB. For this reason, Plaintiff lacks standing to bring Count I, and Count II in so far as it relies upon any statements made to the CFPB, and they should be dismissed with prejudice.

### iii.   *Counts I and II fail because Defendant is not a debt collector under the FDCPA.*

The sections of the FDCPA that Plaintiff alleges Defendant violated in Counts I and II of

---

[2] *See Spuhler v. State Collection Service, Inc.*, No. 19-2630, — F.3d —, 2020 WL 7351098 (7th Cir. Dec. 15, 2020) (dismissing plaintiff's putative class action FDCPA for lack of standing because plaintiffs failed to plead that the offending statement caused them to take detrimental actions); *Brunett v. Convergent Outsourcing, Inc.*, No. 19-3256, — F.3d —, 2020 WL 7350277 (7th Cir. Dec. 15, 2020) (dismissing plaintiff's putative class action FDCPA because confusion itself is not an injury); *Nettles v. Midland Funding, LLC*, No. 19-3327 — F.3d —, 2020 WL 7488610 (7th Cir. Dec. 21, 2020) (dismissing plaintiff's putative class action FDCPA claim because "becoming annoyed and consulting a lawyer [do not] suffice to establish injury for standing purposes"); *Larkin*, 982 F.3d at 1066 (dismissing FDCPA claim due to plaintiff's failure to "articulate an injury of any kind, either tangible or intangible, from the violation."); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, No. 19-3514, — F.3d —, 2020 WL 7350278 (7th Cir. Dec. 15, 2020) (dismissing FDCPA claim holding being annoyed or intimidated by a letter does not constitute concrete harm sufficient for Article III standing).

77790754.3

Plaintiff's FAC require that the actor be a "debt collector." *See* FAC ¶¶ 56, 61; *see also* 15 U.S.C. § 1692(e) ("A *debt collector* may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.") (emphasis added). The FDCPA defines a debt collector as:

> any person who … attempts to collect, directly or indirectly *debts owed or due or asserted to be owed or due another*…This term does not include…any person collecting or attempting to collect any debt owed or asserted to be owed or due another to the extent such activity…*concerns a debt which was not in default at the time it was obtained by such person.*

15 U.S.C. § 1692(a)(6)(F)(iii) (emphasis added). "The FDCPA protects debtors from improper practices of 'debt collectors'—third parties who attempt to recoup debts owed to creditors." *Nwoke v. Countrywide Home Loans, Inc.*, 251 Fed. Appx. 363, 364-65 (7th Cir. 2007). "But a creditor who collects its own debt using its own name is not a 'debt collector.'" *Id.*; *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017). Here, Plaintiff does not, and cannot, allege that Defendant was attempting to collect "debts owed or due or asserted to be owed or due another." *See generally* FAC. Indeed, by his own allegations and evidence, Plaintiff has established that Defendant was a creditor, not a debt collector, under the FDCPA. *See* FAC, Ex A; *see also* Ex. 1. Plaintiff alleges that he has a mortgage with Defendant, and that it was Defendant who committed the acts which purportedly violated the FDCPA. *Id*. Accordingly, Plaintiff admits that Defendant was acting on its behalf.

Moreover, Plaintiff has established the debt was not in default at the time it was obtained by Defendant. In his CFPB Complaint, Plaintiff attaches credit reports showing that the loan has been with Defendant since its origination. *See* Ex. 1. Plaintiff has established by his own evidence that Defendant is not a debt collector because the debt was not in default at the time it was obtained by Defendant. Additionally, it is clear from the public record that Defendant was the original lender of the loan. A true and correct copy of the Mortgage recorded in the Cook County Recorder of

Deeds as Document Number 1807415017 is attached hereto as Exhibit 2.[3] Here, Plaintiff does not

(and cannot) allege that his debt was in default at the time Defendant began servicing the loan.

Consequently, Plaintiff's FDCPA claims should be dismissed for this additional reason.

### iv. Counts I and II should be dismissed because Defendant was not engaged in debt collection under the FDCPA.

The sections of the FDCPA complained of by Plaintiff also requires that the purportedly

violative act be done in "connection with the collection of any debt." FAC ¶¶ 55, 59, 61; *see also*

15 U.S.C. § 1692(e) ("A debt collector may not use any false, deceptive, or misleading

representation or means in connection with the collection of any *debt*.") (emphasis added). "The

FDCPA applies only to 'debt collectors' whose conduct involves the collection of a debt."

*McCready v. eBay, Inc*., 453 F.3d 882, 889 (7th Cir. 2006). "To be a 'debt collector' under the

FDCPA entails engaging in some affirmative conduct with regard to collecting a debt, as evidenced

by the statute's use of active verbs." *Id.* The Seventh Circuit has held that communications related

to a forbearance agreement is not debt collection under the FDCPA. *See Bailey v. Security Nat'l*

*Servicing Corp*., 154 F.3d 384 (7th Cir. 1998).

Here, it is clear from a common sense review of the facts that the actions taken by

Defendant are not debt collection.[4] The loan was not in default at the time that Plaintiff accepted

the forbearance, and the very nature of the forbearance was to keep the loan from becoming

delinquent due to the hardships purportedly suffered by Plaintiff and his tenant due to Covid-19.

*See e.g.,* FAC ¶¶ 14-22. Plaintiff does not allege that he missed any payments or otherwise

---

[3] "The courts … permit a district court to take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Capital Corp. v. Lease Resolution Corp*., 128 F.3d 1074, 1080 (7th Cir. 1997). Pursuant to Rule 201 of the Federal Rules of Evidence, Defendant respectfully requests that the Court take judicial notice of the Mortgage attached hereto as Exhibit 2.

[4] *See Bailey*, 154 F.3d at 387 ("Common sense and the plain meaning of the statute require that we distinguish between an individual who comes collecting on a defaulted debt and one who seeks collection on a debt owed under a brand new payment plan, or forbearance agreement that is current.").

defaulted on the forbearance agreement, and Plaintiff admits that Defendant reported the loan as "Current" and the monthly payments as received on time during the forbearance. *See generally id.*; *see also* Ex. 1. Moreover, the purported misrepresentations Defendant made in response to the CFPB Complaint are even a step further removed from possible debt collection as contemplated by the FDCPA. Plaintiff provides no information to establish how Defendant's explanatory response to the Plaintiff-initiated CFPB Complaint—which contains no demand for payment and relates to a loan that Plaintiff admits was not in default—is debt collection in any sense of the word, much less as defined and contemplated by the FDCPA.

Plaintiff points to the disclaimer in the Acceptance Letter that states "THIS COMMUNICATION IS FROM A DEBT COLLECTOR" as proof that Defendant is a debt collector engaged in debt collection under the FDCPA. FAC ¶¶ 51, 60. However, the presence of this type of disclaimer "does not automatically trigger the protections of the FDCPA…." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010). Thus, Plaintiff must still otherwise show that Defendant was a debt collector engaged in debt collection as contemplated and defined under the FDCPA. Plaintiff has failed to do so. For these reasons, Plaintiff's claims pursuant to the FDCPA fail and should be dismissed with prejudice.

**B.** **Plaintiff's State Law Claims Fail as a Matter of Law**

"To state a claim under the ICFA, a plaintiff must allege (1) a deceptive act or practice by the defendant; (2) that the act or practice occurred in a course of conduct involving trade or commerce; (3) that the defendant intended the plaintiff to rely on the deception; and (4) that actual damages were proximately caused by the deception." *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 739 (N.D. Ill. 2019) (internal quotation marks omitted). Here, Plaintiff's ICFA claim, while not the model of clarity, appears to be based on the purported misrepresentation made by Defendant's representative that the "forbearance would not have any effect on his credit." FAC,

¶¶ 26, 69-70. The ICFA claim also appears to be based on Defendant purportedly "falsely reporting the amounts due and making false statements to the CFPB." *Id.* ¶ 71. However, the ICFA claim fails because Plaintiff has not adequately plead the claim, Plaintiff lacks standing to assert the claim, and it is preempted by the FCRA.

### i. Plaintiff's ICFA Claim Based upon Alleged Misrepresentations is Insufficiently Plead Under Rule 9(b).

"When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citing *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) ("[A] complaint made pursuant to the ICFA must be pled with the same specificity as that required under common law fraud.") (internal quotation marks omitted)).[5] "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).[6] "Under Rule 9(b), 'a party must state with particularity the circumstances constituting fraud or mistake.'" *Stemm*, 374 F. Supp. 3d at 739. "This is also known as the 'who, what, when, where, and how' standard." *Id.*

Here, Plaintiff's allegations relating to his ICFA claim sound in fraud because they are based on the purported misrepresentation by Defendant's representative.[7] However, the factual allegations relating to the purported misrepresentation by Defendant are woefully insufficient

---

[5] *See also Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 754 (N.D. Ill. 2012) ("Complaints alleging deceptive practices in violation of the ICFA must be plead with sufficient particularity under Fed.R.Civ.P. 9(b)….").

[6] *See also McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (combining cases holding that fraud equals misrepresentation).

[7] *See* FAC, ¶¶ 71 ("Defendant caused misrepresentations and false threats to be made against Plaintiff"); 73 ("Defendant's misrepresentations…were communicated to Plaintiff with the intent that he and the CFPB rely on said misrepresentations, and Plaintiff relief on said misrepresentations"; 74 ("Plaintiff suffered … damages due to Defendant's misrepresentations").

under Rule 9(b). Plaintiff generally pleads in a conclusory manner that at some point prior to accepting the forbearance, he spoke on the phone with a "Loan Depot representative" that allegedly stated that "accepting the forbearance would not have any effect on his credit." FAC, ¶ 26. Plaintiff does not plead when he spoke to the representative, which is particularly relevant in light of the written confirmation of the forbearance terms that loanDepot provided to Plaintiff after he accepted it. Instead of providing this important fact, as required, Plaintiff has plead a general allegation which falls short of the particularity required by the law. *Id.*

Indeed, the actual evidence that Plaintiff has attached to his FAC, clearly states conspicuously, in writing Defendant's position relating to credit reporting and the forbearance. FAC, its Ex. A. Thus, Plaintiff's allegations relating to the misrepresentation are directly contradicted by his own evidence. "Whether an act is deceptive [under the ICFA] must be evaluated 'in light of the totality of the information made available to the plaintiff.'" *Stemm*, 374 F. Supp. 3d at 739. It is clear that Plaintiff received the Acceptance Letter which contained the above language relating to credit reporting. The language is unequivocal: "WE ARE UNCERTAIN AS TO THE IMPACT ON YOUR CREDIT SCORE." FAC, its Ex. A. Plaintiff provides no support for his claim that a purported misrepresentation during a phone call at some unspecified time by some unnamed "representative" of Defendant trumps the clear, conspicuous language of the letter confirming the actual terms of the forbearance agreement to which he agreed.

Additionally, Plaintiff fails to allege how or why Defendant intended that Plaintiff rely on the purported misrepresentation that the forbearance would not affect his credit score. "The plaintiff need not establish that the defendant intended to deceive him, but he must allege that the defendant 'committed a deceptive or unfair act and intended that the plaintiff rely on that act.'" *Geske v. Fed. Nat'l Mortg. Ass'n,* No. 13-CV-7720, 2015 WL 1397087, at *3 (N.D. Ill. Mar. 25, 2015) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir.2012)). It is

nonsensical that a mortgage company would act to induce a borrower to stop making payments under a loan. Plaintiff has provided no allegations or explanation as to Defendant's intention that Plaintiff rely on the purported misrepresentation in accepting the forbearance.

Moreover, even if Plaintiff's ICFA claim is based on a claim of unfairness, the claim still fails. While an ICFA claim based on unfairness need not be plead with the particularity of Rule 9(b), Plaintiff has not sufficiently plead that Defendant's action qualifies as an "unfair" act or practice. "The Seventh Circuit has explained that 'whether a practice is unfair depends on a case-by-case analysis,' but that three criteria are relevant: (1) whether the conduct 'violate[s] public policy,' (2) is 'so oppressive that the consumer has little choice but to submit,' and (3) whether the conduct 'cause[s] consumers substantial injury.'" *Geske* 2015 WL 1397087, at *3 (quoting *Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir.2010)). Plaintiff has plead no allegations that the purported misrepresentation violates public policy or rose to the level of oppressive or coercive conduct—indeed Plaintiff admits that he accepted the forbearance because he and his tenant were "temporarily not working due to [their] companies having to close." FAC, its Ex. B. Nor has Plaintiff alleged actual damages arising from the purported misrepresentation. *See Infra*, § III(B)(ii). Plaintiff's allegations do not plausibly suggest "unfairness" within the meaning of the ICFA. Thus, Plaintiff's ICFA claim fails and should be dismissed.

### ii. Plaintiff fails to Plead Actual Damages Arising from the Statements to the CFPB

Like his FDCPA claims, Plaintiff's ICFA claim fails because he has not, and cannot, plead actual damages arising from Defendant's purportedly false statements made to the CFPB. "To plead an ICFA claim adequately, a plaintiff must allege actual damages." *Terrazzino v. Wal-Mart Stores, Inc*., 335 F. Supp. 1074, 1084 (N.D. Ill. 2018) "The actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'" *Kim v. Carter's Inc*., 598 F.3d 362, 365 (7th Cir. 2010) (citing *Mulligan v. QVC, Inc*., 382 Ill.App.3d 620, 321 Ill.Dec. 257,

888 N.E.2d 1190, 1197 (2008)).[8]

Here, Plaintiff has not included any allegation of harm stemming from Defendant's purported misrepresentations in response to the CFPB Complaint. Instead, with respect to ICFA claim, Plaintiff baldly alleges that "Plaintiff suffered actual and consequential damages due to Defendant's misrepresentations," FAC ¶ 74, but fails to explain how purportedly false statements to the CFPB resulted in a pecuniary loss, decreased his credit score, or affected his ability to obtain a new loan. Indeed, there is no allegation that the statements made by Defendant to the CFPB were ever transmitted to a credit reporting agency. Additionally, while Plaintiff baldly alleges that he incurred "attorney's fees" relating to the CFPB Complaint, he does not allege that an attorney prepared the complaint or response or explain how Defendant's response to the Plaintiff-initiated CFPB Complaint otherwise caused him to incur attorney's fees.

### iii. Plaintiff's ICFA Claim relating to Credit Reporting is Preempted by the FCRA.

Plaintiff's claim under the ICFA also fails because, to the extent that it relates to the credit reporting, it is preempted by the FCRA. FAC ¶¶ 63-74. Specifically, 15 U.S.C. § 1681t(b)(1)(F), states: "No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under ...(F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]" The Seventh Circuit has repeatedly confirmed that the FCRA preempts state law claims relating to information furnished to credit reporting agencies.[9]

Like the plaintiff in *Aleshire*, here Plaintiff alleges that Defendant violated the ICFA by

---

[8] *See also Armbrister*, 896 F. Supp. 2d 756 (Dismissing ICFA claim because "[p]laintiffs have not alleged actual damages, which is a required element of an ICFA claim.").

[9] *See Purcell v. Bank of America*, 659 F. 3d 622, 623-26 (7th Cir. 2011) (confirming that FCRA's preemption of "laws" of any state includes state statutory claims and common law claims); *Aleshire v. Harris, N.A.*, 586 Fed. Appx. 668 (7th Cir. 2013) (same).

reporting information relating to his loan balance to the credit reporting agencies which purportedly adversely affected his credit score and ability to borrow money. FAC ¶¶ 71-72. Because Plaintiff's ICFA claim arises out of Defendant's reports to consumer credit reporting agencies, it is related to a matter regulated under Section 1681s-2. *Aleshire*, 586 Fed. Appx. at 670. The Seventh Circuit has explicitly held that "§ 1681t(b)(1)(F) reduces the scope of permissible state regulation to preempt even willfully false reports that fall under its purview." *Causay v. Wells Fargo Bank, N.A.*, No. 16-CV-7398, 2016 WL 7188167, at *4 (N.D. Ill. Dec. 12, 2016). Plaintiff's ICFA claims therefore must be dismissed because they are preempted by the FCRA.[10]

## C. **Plaintiff's § 1681s-2(a) Claim Fails Because There is no Private Right of Action**

"The FCRA (not the FDCPA) contains a mechanism to correct the report and provides repercussions for furnishers who fail to follow the rules regarding the accuracy of consumer credit information." *Kohut v. Trans Union LLC,* No. 04 C 2854, 2004 WL 1882239, at *3 (N.D. Ill. Aug. 11, 2004)*. However, the FCRA limits the liability of so-called "furnishers," such as Defendant, under the FCRA. The FCRA "imposes some duties on the sources that provide credit information to credit reporting agencies, called 'furnishers.'" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). Section 1681s-2(a) imposes on furnishers a duty "to provide accurate information" to credit reporting agencies in the first instance, but only regulators may enforce Section 1681s-2(a) as there is no private right of action. 15 U.S.C. § 1681s-2(a), (c).[11]

Unlike Section 1681s-2(a), Section 1681s-2(b) is enforceable through a private right of action. *Neiman*, 2014 WL 3705345, *6. Section 1681s-2(b) imposes on furnishers a duty "to

---

[10] *See Purcell*, 659 F. 3d at 623-26; *Aleshire*, 586 Fed. Appx. at 672; *see also Geske*, 2015 WL 1397087 (dismissing plaintiffs' ICFA claim seeking damages for alleged unlawful credit reporting activities as preempted by FCRA).

[11] *See also Purcell*, 659 F.3d at 623 ("[A]lthough Purcell's claim arises under § 1681s–2(a), that section does not create a private right of action.") (citing *Perry v. First National Bank,* 459 F.3d 816 (7th Cir.2006)); *Neiman v. Chase Bank, USA, N.A.*, 2014 WL 3705345, *6 (N.D. Ill. July 25, 2014) (citing 15 U.S.C. § 1681s-2(c)).

77790754.3

reinvestigate the credit information" after "notice from a credit reporting agency that the information [they have] provided is in dispute." *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 922 (N.D. Ill. 2000). Under Section 1681s-2(b), a furnisher's duty to investigate is triggered only "[w]hen a credit reporting agency notifies a furnisher of a dispute." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). Notice directly from a consumer—as opposed to from a credit reporting agency—does not trigger a furnisher's duty to investigate. *Gulley v. Pierce & Assocs.*, 436 Fed. Appx. 662, 665 (7th Cir. 2011); *Dornhecker*, 99 F. Supp. 2d at 928-29.

As a result, to state a claim, "[t]he majority of other judges in this district who have addressed this issue have required plaintiffs to allege that defendants received the requisite notice from credit reporting agencies in order to survive the motion to dismiss stage." *Neiman*, 2014 WL 3705345, *7 (collecting cases).[12] Here, Plaintiff has not, and cannot, allege that he ever submitted a dispute to any credit reporting agencies or that Defendant failed to reasonably investigate a dispute received from a credit reporting agency. Indeed, Plaintiff has failed to even plead that the information reported by Defendant is inaccurate. Moreover, Defendant has reported in accordance with the FCRA requirements as it relates to the CARES Act. *See generally* 15 U.S.C. § 1621s-2(a)(F). For these reasons, each of Plaintiff's claims fail as a matter of law and should be dismissed with prejudice.

## <u>Conclusion</u>

For all these reasons, Defendant respectfully requests that the Court grant its Motion to Dismiss Plaintiff's First Amended Class Action Complaint, with prejudice, in its entirety.

---

[12] *Gulley*, 2010 WL 5060257, *4 ("[Plaintiff] has not alleged that a credit reporting agency requested U.S. Bank to investigate his disputed debt. Thus the requirements of § 1681s-2(b) were never triggered. As a result, [Plaintiff] has not stated a viable claim."), *aff'd* 436 Fed. Appx. at 665 ("As the district court recognized, absent a formal notice from a credit reporting agency, U.S. Bank's duty to investigate was never triggered.").

Respectfully submitted,

POLSINELLI PC

*/s/ Rodney L. Lewis*
Rodney L. Lewis
POLSINELLI PC
150 North Riverside Plaza, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 819-1900
Facsimile: (312) 819-1910
rodneylewis@polsinelli.com

Aaron A. Wagner (*Admitted Pro Hac Vice*)
POLSINELLI PC
1000 Second Ave., Suite 3500
Seattle, WA 98104
Telephone: (206) 393-5442
Facsimile: (206) 393-5400
aawagner@polsinelli.com

*Attorneys for Defendant loanDepot.com, LLC*

77790754.3

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on May 10, 2021, I served the foregoing with the Clerk of the Court using the CM/ECF System, which will send electronic notification of such filing to all counsel of record.

*/s/ Rodney L. Lewis*