**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SAMUEL LEWIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 20 C 7820 |
| v. | ) ) | Judge Jorge Alonso |
| LOANDEPOT.COM, LLC, | ) ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

In this putative class action, plaintiff Samuel Lewis asserts claims under several consumer protection statutes against defendant loanDepot.com, LLC ("loanDepot"), arising out of its mortgage servicing and credit reporting. Defendant moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

## <u>Background</u>

In the spring of 2020, plaintiff was struggling to pay his mortgage. He contacted defendant, his mortgage servicer, to inquire about his options. Not long before, on March 27, 2020, Congress had passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281. Among many other provisions, the CARES Act provided mortgage borrowers facing financial hardships with the right to request forbearance for up to 180 days, as well as an extension for another 180 days. *See* 15 U.S.C. § 9056.

Plaintiff alleges that, during a phone call with defendant in late March or early April 2020, defendant informed him that putting his mortgage loan in forbearance would not affect his credit.

Relying on that representation, plaintiff formally requested forbearance. On April 5, 2020, defendant sent plaintiff a letter notifying him that it had accepted his forbearance request.

However, defendant's representation that forbearance would not affect his credit proved to be incorrect. In June 2020, plaintiff began looking into refinancing his mortgage, and he submitted preliminary refinancing applications with several lenders. On June 12, 2020, the credit reporting agency Experian informed plaintiff that his loan balance had increased, and his credit score had dropped fourteen points. Upon investigation, plaintiff learned that defendant had added the unpaid interest that accrued during his forbearance period to the remaining principal, increasing the loan balance by over $10,000. At his reduced credit rating, plaintiff was unable to obtain a new loan.

Plaintiff contacted defendant and explained that one of its representatives had specifically told him that forbearance would not have any negative impact on his credit report, but defendant maintained that it "had the right" to report an increase in the loan balance. (Am. Compl. ¶ 35, ECF No. 16.) In July 2020, plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB"). After obtaining a response from defendant and reply from plaintiff, the CFPB closed the complaint and added it to its database. Subsequently, plaintiff filed this case.

Plaintiff asserts his claims in four counts. Counts I and II assert essentially the same claim, for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by making false representations in connection with the collection of a debt, *see* 15 U.S.C. § 1692e. Count III asserts a claim for violating the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, by making misrepresentations to plaintiff in its role as his mortgage servicer. Count IV asserts a claim for violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(c), by furnishing credit reporting agencies with false information, *see* 15 U.S.C. § 1681s-2. He asserts these claims on behalf of himself and a putative class of

similarly situated mortgage borrowers, defined as follows: "All residential mortgage borrowers with a Government Sponsored Enterprise-backed loan for whom LOANDEPOT.COM, LLC placed a residential mortgage into forbearance under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, and affirmance that the borrower is experiencing a financial hardship due to COVID-19." (Am. Compl. ¶ 39.)

## Discussion

Although plaintiff's complaint includes two federal claims, he (perhaps presciently) asserts not federal question jurisdiction, 28 U.S.C. § 1331, but that the Court has diversity jurisdiction under the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]"). Under CAFA, an unincorporated association such as a limited liability company is deemed to be a citizen of "the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Plaintiff alleges that he is a resident and citizen of Illinois and that defendant is a Delaware limited liability company with its principal place of business in California, so plaintiff has made sufficient allegations of subject matter jurisdiction under CAFA.[1]

---

[1] The Court notes that, if plaintiff were to amend his complaint to drop the class allegations, he would have to add additional jurisdictional allegations to establish defendant's citizenship. For purposes of the diversity jurisdiction outside the CAFA context, the citizenship of a limited liability company, or "LLC," is "the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). Thus, when a plaintiff asserts diversity jurisdiction under 28 U.S.C. § 1332(a) and one of the parties is an LLC, the plaintiff must identify the citizenship of each of the LLC's members and the citizenship of each member. In addition, "if those members have members, [the plaintiff must identify and allege] the citizenship of those members as well. *Id.*; *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003) ("Thus, . . . the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be.") (internal quotation marks omitted).

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (internal quotation altered)).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Additionally, any claims of or including acts of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires the pleading party to "state with particularity the circumstances constituting fraud," apart from "[m]alice, intent, knowledge, and other conditions of a person's mind," which "may be alleged generally." *See U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 775, 781 n.29 (7th Cir. 2016). The requirement that

circumstances of fraud be pleaded with particularity "ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." *Pirelli Armstrong Tire Corp. Retiree Med. Ben. Trust v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011). Ordinarily, a fraud plaintiff's complaint must include such information as "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated," *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008), or, as the Seventh Circuit has "often incanted," the "'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Pirelli*, 631 F.3d at 441-42 (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). However, the "exact level of particularity that is required will necessarily differ based on the facts of the case," *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011), and courts must not "take an overly rigid view of the formulation." *Pirelli*, 631 F.3d at 442.

Defendant moves to dismiss each of plaintiff's claims. In his response brief, plaintiff does not defend the FDCPA or FCRA claims, instead focusing only on the ICFA claim. The Court therefore deems the FDCPA and FCRA claims abandoned. *Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim."); *Jones v. U.S. Bank Nat. Ass'n*, No. 10 C 0008, 2011 WL 663087, at *2 (N.D. Ill. Feb. 14, 2011) ("[O]nce a motion to dismiss has been filed pursuant to Federal Rule of Civil Procedure 12(b)(6), it becomes the plaintiff's obligation to present legal argument and citations to relevant authority for purposes of

substantiating the plaintiff's claims. If the plaintiff fails to respond to legitimate arguments raised by the defendant, the plaintiff's claims may be dismissed.") (internal citation omitted).

Defendant argues that the remaining claim, the ICFA claim, must be dismissed for three reasons: (1) the ICFA claim is preempted by the FCRA; (2) plaintiff fails to plead a plausible ICFA claim under Rule 8 with the particularity required by Rule 9(b); and (3) plaintiff fails to state a claim for violating the ICFA because it is not plausible that he was actually deceived. The Court is not persuaded by any of these arguments.

## I.    Plaintiff's ICFA claim is not preempted by the FCRA

"The preemption doctrine is grounded in the Constitution's Supremacy Clause." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 762 (7th Cir. 2008).  The supremacy clause declares that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Law of any State to the Contrary notwithstanding."  U.S. Const. Art. VI., cl. 2.

The FCRA includes the following preemption provision:

No requirement or prohibition may be imposed under the laws of any State--
**(1)** with respect to any subject matter regulated under—
. . .
**(F)** section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.

15 U.S.C. § 1681t. Defendant argues that plaintiff's ICFA claim is preempted under this provision because the claim relates to loanDepot's responsibilities as a furnisher of information to consumer reporting agencies. Plaintiff responds that defendant has mischaracterized his ICFA claim, which plaintiff recharacterizes as follows: defendant told him that forbearance wouldn't hurt his credit, but the increase in his loan balance *did* hurt his credit, and his diminished credit score prevented him from refinancing his mortgage loan, causing him pecuniary harm. (*See* Pl.'s Resp. Br. at 4-5,

ECF No. 21.) Because this claim is premised on defendant's alleged false statements to plaintiff,[2] rather than any statements to credit reporting agencies, plaintiff argues, it is not preempted.

The Court agrees with plaintiff. The applicable substantive provision of the FCRA is § 1681s-2, which imposes duties related to furnishing accurate information to credit reporting agencies and investigating disputes about the accuracy of any such information. Section 1681t(b)(1)(F) preempts claims based on any "requirement or prohibition" imposed by state law "***with respect to*** any subject matter regulated" by § 1681s-2 "relating to the responsibilities of persons who furnish information to consumer reporting agencies" (emphasis added). The Second Circuit has explained that, in this context, "with respect to" means "concerning":

> [W]e hold that § 1681t(b)(1)(F) preempts only those claims that *concern* a furnisher's responsibilities. Put differently, § 1681t(b)(1)(F) does not preempt state law claims against a defendant who happens to be a furnisher of information to a consumer reporting agency within the meaning of the FCRA if the claims against the defendant do not also concern that defendant's legal responsibilities as a furnisher of information under the FCRA.

*Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 (2d Cir. 2015). In *Galper*, the plaintiff claimed that a bank's employees violated state law when they permitted identity thieves to open

---

[2] In his complaint and response brief, plaintiff suggests that defendant's allegedly false statements to the CFPB also form some part of his ICFA claim, but it is not clear to the Court how these statements factor in. Plaintiff does not allege that they contributed to the denial of his refinancing applications, so the Court does not see how he was harmed by them. Further, plaintiff's theory of falsity with respect to these statements is not clear. Defendant told the CFPB that it reported the "aggregate balance" of plaintiff's loan to the credit reporting agencies, but not an increase in the "principal balance, delinquent payments, [or] any negative account information." (Am. Compl. Ex. B, ECF No. 16-2.) Defendant has attached the very credit reports that plaintiff relied on in the CFPB proceedings as exhibits to its memorandum in support of its motion to dismiss, and they show plaintiff's loan balance, without distinguishing between principal and interest, just as defendant said in its CFPB response. In response, plaintiff does not explain this aspect of his theory in any detail, and the Court is puzzled by it. But it makes no difference at this early stage because, even putting aside the statements to the CFPB, plaintiff states a claim based on his allegations of defendant's statements to him about whether forbearance would have any impact on his credit, as the Court will explain below.

fraudulent accounts in the plaintiff's name. The Second Circuit concluded that the plaintiff's state-law claim was not preempted because, although the alleged misconduct *resulted* in negative credit reporting by the defendant, it did not *concern* the credit reporting. *Id.* at 447. Instead, it concerned the opening of fraudulent accounts in the plaintiff's name, which was distinct from the negative credit reporting that followed.

Similarly, in *Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 307 (6th Cir. 2016), the Sixth Circuit explained (in an unpublished decision) that state-law claims arising out of misconduct that led to negative credit reporting were not preempted because they did not directly concern the credit reporting itself. There, the plaintiff asserted breach of contract and fraud claims arising out of the defendant debt collector's conduct with respect to a separate collections action. The parties settled the debt that was the subject of the collections action, but the debt collector never dismissed the action, and a default judgment was entered, which ultimately damaged the plaintiff's credit. The plaintiff filed suit against the debt collector, asserting claims of fraud and breach of contract for failing to terminate the collections action even after settling the underlying debt. These state-law claims were not preempted by the FCRA, the Sixth Circuit explained, because they concerned the defendant's actions in procuring the judgment, not its actions in reporting the judgment:

> Assume for a moment that someone other than [defendant] reported the judgment to the credit agencies . . . , that the judgment ended up on [plaintiff's] credit report, and that, because the judgment was on her credit report, [plaintiff] suffered quantifiable damages. [Defendant's] alleged fraud or breach of contract would be a cause of [plaintiff's] damages, and [defendant] could still be held liable. It is not the case that *any* damages would be related *only* to the duties and responsibilities of furnishers of information to a consumer reporting agency. Because the two claims do not rely on the proposition that [defendant] was a furnisher of information related to the judgment, they are not preempted by the Fair Credit Reporting Act's preemption provisions.

*Id.* (internal quotation marks and citations omitted); *see Galper*, 802 F.3d at 447 (claim was not preempted because "[w]hether it was [defendant]—or government investigators or another bank

or some other person or entity—that eventually reported the adverse information to consumer reporting agencies [was] irrelevant"). Thus, because the plaintiff's state-law claims would have been the same regardless of whether the defendant or some other entity had furnished the offending information to credit reporting agencies, they were not preempted.

Similar logic applies here. Although loanDepot furnished damaging information to credit reporting agencies, plaintiff's ICFA claim would be the same if it had somehow been some other entity, not loanDepot, that had reported the increased loan balance. Plaintiff alleges that defendant misled him about the impact forbearance would have on his credit, and to the extent that that is the deceptive conduct that lies at the heart of his ICFA claim, the claim does not concern the "subject matter regulated" by § 1681s-2, namely, "fail[ing] to accurately report or correct information on a consumer's credit report." *Strianese v. Diversified Consultants, Inc.*, No. 318CV00100, 2019 WL 495585, at *2 (W.D.N.C. Feb. 8, 2019). *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019) (claim that defendant fraudulently misrepresented that it would lend plaintiff additional funds not preempted because it "does not arise from . . . reporting obligations as a furnisher of consumer credit information"); *Freeman v. Ally Fin. Inc.*, No. 20-CV-1241, 2021 WL 1099840, at *7-8 (D. Minn. Mar. 23, 2021) (state-law claims preempted to the extent "premised on disclosures to credit reporting agencies," but not to the extent premised on unlawful entry to plaintiff's garage to repossess vehicle); *Fierros v. Quebedeaux Buick GMC Inc.*, No. CV2000245, 2020 WL 8673974, at *4 (D. Ariz. Nov. 24, 2020) (state-law claims preempted to the extent based on "report[ing] of inaccurate information to credit reporting agencies," but not to the extent based on plaintiff's "direct communications with" defendant); *Llames v. JP Morgan Chase & Co.*, No. 11 CV 5899, 2012 WL 1032910, at *4 (N.D. Ill. Mar. 23, 2012) (state-law fraud claim concerning defendant's failure to remove plaintiff's name from ex-boyfriend's credit account not preempted

because, although defendant's alleged misconduct led to negative credit reporting, claim did not "rest on reporting information to consumer reporting agencies"); *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 377 (S.D.N.Y. 2010) (claim was "clearly preempted" to the extent based on "defendants' system of investigation for purposes of reporting" to credit reporting agencies, but not to the extent based on "defendants' general internal systems of review regarding account disputes—separate from investigations related to its role as a Furnisher").

For these reasons, plaintiff's ICFA claim is not preempted by the FCRA.

## II.    Plaintiff pleads sufficient factual matter under Rules 8 and 9(b)

Defendant argues that plaintiff's complaint must be dismissed because plaintiff does not plead a plausible ICFA claim with the particularity required by Rule 9(b). Plaintiff alleges that he spoke with a loanDepot representative who stated that "accepting the forbearance would not have any effect on his credit" (Am. Compl. ¶ 26), without stating precisely when the communication occurred or who made the allegedly fraudulent statement. According to defendant, there is not enough detail in this allegation to satisfy Rule 9(b). Further, defendant argues, the allegation appears to be contradicted by the April 5, 2020 letter plaintiff received from loanDepot about the forbearance, which specifically stated, in capital letters, that loanDepot is "uncertain as to the impact" of forbearance on his "credit score." (Am. Compl., Ex. A) (emphasis removed). Additionally, according to defendant, plaintiff does not plead sufficient facts to make the claim plausible because, as a general matter, no lender would "induce a borrower to stop making payments under a loan" (Def.'s Reply Br. at 7, ECF No. 22), and plaintiff offers no allegations to overcome this fundamental implausibility.

First, defendant sets the Rule 9(b) bar too high. "Although Rule 9(b)'s special pleading standard is undoubtedly more demanding than the liberal notice pleading standard which governs

most cases, Rule 9(b)'s special requirements should not be . . . decoupled from the general rule that a pleading must only be so detailed as is necessary to provide a defendant with sufficient notice to defend against the pleading's claims." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008). "Even under the standard of Rule 9(b), the point of a complaint is to give notice, not prove the claim." *In re Mack Indus., Ltd.*, No. 21 CV 1457, 2021 WL 4815270, at *3 (N.D. Ill. Aug. 2, 2021) (citing *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). "Not even Rule 9(b) requires fact pleading." *Native Am. Arts, Inc. v. Mangalick Enterprises, Inc.*, 633 F. Supp. 2d 591, 598 (N.D. Ill. 2009); *see Bankers Tr.*, 959 F.2d at 683. Plaintiff must "'provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless,'" so defendant can quickly neutralize the risk of "stigmatic injury that potentially results from allegations of fraud." *Presser*, 836 F.3d at 776 (quoting *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005)). What Rule 9(b) requires, at bottom, is that the plaintiff allege sufficient facts to "'enable[ the d]efendants to defend [the] action.'" *Pension Tr. Fund for Operating Engineers v. DeVry Educ. Grp., Inc.*, No. 16 C 5198, 2017 WL 6039926, at *9 (N.D. Ill. Dec. 6, 2017) (quoting *FTC v. DeVry Educ. Grp., Inc.*, No. CV-16-00579, 2016 WL 6821112, at *6 (C.D. Cal. May 9, 2016)).

Here, plaintiff does not provide the exact date of his conversation or the identity of the person he spoke with, but he asserts that the conversation took place over the phone and it must have taken place in a particular ten-day period between when the CARES Act was passed on March 27, 2020, and when his forbearance request was accepted on April 5, 2020. In another case, more specifics about the content of the alleged misrepresentations might be necessary, but in the circumstances of this case, the Court does not agree that plaintiff's allegations are insufficient under Rule 9(b). In the Court's experience, financial service institutions such as defendant keep

records of customer service contacts, and defendant is likely in a position to "riposte swiftly and effectively if the claim is groundless." *Presser*, 836 F.3d at 776 (internal quotation marks omitted). To be sure, it would be better if plaintiff could name the employee, but the Court must be "sensitive to information asymmetries that may prevent a plaintiff from offering more detail," *Pirelli*, 631 F.3d at 443, and the Court can hardly blame plaintiff if he did not retain the name of an employee he spoke to approximately twelve months before filing the amended complaint, in what may have seemed an unremarkable conversation at the time. The details that plaintiff has submitted suffice to provide fair notice and enable defendant to defend the action.

As for defendant's arguments that plaintiff's claim is implausible in light of (a) the forbearance acceptance letter he received from loanDepot and (b) loanDepot's interests as a lender, these are out of place at this stage. A plaintiff need not "exclude all possibility of honesty in order to give the particulars of fraud," *Lusby*, 570 F.3d at 854; instead, the "grounds for the plaintiff's suspicions" need only "make the allegations *plausible*." *Pirelli*, 631 F.3d at 443. It is enough to show "the nature of the charge"; plaintiff is not required to allege the fraudulent scheme in such minute detail as to "rule out all possible defenses." *Lusby*, 570 F.3d at 854-55; *see Meridian Lab'ys, Inc. v. OncoGenerix USA, Inc.*, No. 18 C 6007, 2020 WL 2468174, at *8 (N.D. Ill. May 13, 2020). The inference of fraud need only be a plausible one, and to state a plausible claim means only to "give enough details about the subject matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). That is, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.* Defendant appears to admit that plaintiff's loan balance increased, and there is nothing so implausible in the suggestion that defendant or the employee who spoke with plaintiff had some motive to encourage plaintiff to request forbearance even if it might damage his credit. Plaintiff need only prove that defendant

12

made a deceptive statement in trade or commerce with the intent that plaintiff rely on it, *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019), and his pleading need only "present a story that holds together" as to whether such a deceptive statement "*could* . . . have happened," *Swanson*, 614 F.3d at 404. The Court fails to see why these things could not have happened as plaintiff alleges. He has met his pleading burden.

## III. Plaintiff makes sufficient allegations of deception to state an ICFA claim

"To prove a private cause of action under [the ICFA], a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005); *see* 815 ILCS 505/2, 10a(a).

Defendant argues that plaintiff does not state a claim under the ICFA because the April 5, 2020 letter cut off its liability. The April 5, 2020 letter that plaintiff received from loanDepot to notify him of the acceptance of his forbearance request specifically warned him that loanDepot was "uncertain as to the impact [of forbearance] on [his] credit score." (Am. Compl. ¶ 28; *see id.*, Ex. A) (emphasis removed). The only material injury that plaintiff pleads is his inability to refinance his mortgage in June 2020, allegedly because his forbearance request damaged his credit rating, despite what he had been told by a loanDepot representative over the phone. Defendant argues that the April 5, 2020 letter set the record straight with respect to whether forbearance might have some effect on plaintiff's credit, so any deceptive statements any loanDepot representative may have made before then cannot have been the proximate cause of any denial of credit occurring months afterward, given that plaintiff admits he had the option to end the forbearance period and resume payments at any time, including immediately after receiving the April 5, 2020 letter.

13

Like some of the arguments in the preceding section, this argument is out of place at the pleading stage. Defendant is essentially arguing that plaintiff "'kn[ew] the truth'" before he was damaged by any deceptive acts. *See Patel v. Zillow, Inc.*, No. 17 C 4008, 2018 WL 2096453, at *9 (N.D. Ill. May 7, 2018) (quoting *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018)), *aff'd*, 915 F.3d 446 (7th Cir. 2019). It is true that "a plaintiff who 'knows the truth' does not have a valid ICFA deceptive practice claim" because the defendant's allegedly deceptive acts cannot have "proximately cause[d] any injury" under the ICFA if they "did not deceive" the plaintiff. *Patel*, 2018 WL 2096453, at *9 (quoting *Haywood*, 887 F.3d at 333, and citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)). But plaintiff has not admitted that he knew the truth, nor has he pleaded himself out of court on this point. He alleges that one of defendant's representatives specifically told him in a phone conversation that forbearance would not affect his credit, and it is not implausible that he might have believed that he could still trust this representative who spoke to him individually about his own individual predicament, even after he later received a boilerplate letter that included a lukewarm disclaimer stating only that loanDepot was "uncertain as to the impact" of forbearance on his credit. *See Swanson*, 614 F.3d at 404; *cf. Patel*, 2018 WL 2096453, at *9 (finding that the plaintiffs "pleaded themselves out of court by alleging facts that defeat[ed] their claim" by admitting that they were "abundantly aware of the deceptive conduct"). Defendant's argument about what the plaintiff knew "is not an appropriate argument to raise at the motion to dismiss stage[,] as the court cannot make any findings of fact as to what the parties did or did not believe at this point in the proceedings." *Richardson v. DSW, Inc.*, No. 05 C 4599, 2005 WL 2978755, at *2 (N.D. Ill. Nov. 3, 2005) (rejecting argument about parties' knowledge at pleading stage); *see Richards*, 696 F.3d at 638 ("[J]udges must not make findings of fact at the pleading stage."). The issue of whether plaintiff

14

"knew the truth" is better left for later stages of proceedings, after the parties have had the opportunity to develop evidence in discovery. *See Avery*, 835 N.E.2d at 862-63 (concluding that it was "abundantly clear" that the plaintiff was "not deceived" only after reviewing the plaintiff's trial testimony); *Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 832 (N.D. Ill. 2009) (concluding at summary judgment stage that defendants' allegedly deceptive acts "did not deceive" plaintiff after reviewing his deposition testimony), *aff'd,* 612 F.3d 932 (7th Cir. 2010).

<u>**CONCLUSION**</u>

Defendant loanDepot.com, LLC's motion to dismiss [18] is granted in part and denied in part. The motion is granted as to plaintiff's federal claims. The motion is denied as to plaintiff's Illinois Consumer Fraud Act claim. A status hearing is set for November 22, 2021.

**SO ORDERED.**                              **ENTERED:   October 29, 2021**

_____
**HON. JORGE ALONSO**
**United States District Judge**